The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons have in any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and All right, first case we'll hear this morning is United States v. McCoy and Mr. Kilbourn, I guess we'll hear from you first. May it please the Court, I am James Kilbourn of Asheville, North Carolina, representing Defendant Appellant Alex Leonard McCoy. As we first suggested in our response to the motion dismissed, the guilty plea entered by Mr. McCoy was void from its inception, having failed to meet the requisite standard of voluntariness and knowledge under the Federal Rules of Criminal Procedure 11, due to a failure of clear agreement on the drug variety and quantities. It also caused a failure of the factual basis to support the plea, absent the defendant's acquiescence. An appeal waiver is a term within the plea agreement, and cannot stand if the plea agreement is set aside. I want to apologize to the panel for tiptoeing around this critical issue in my briefing, but because of irreconcilable issues in the plea agreement itself, which renders his plea involuntary and unknowing, Mr. McCoy appears before you today to ask this Court to set aside the plea entered in this matter, due to its failure to be supported by factual basis, as well as its lack of knowledge. Judge, to be honest with you, I read back through my brief, and a stop clock is right twice a day, and I realized that we never reach the other issues I argued, that the only issue that this case turns upon is whether or not the plea agreement was voluntary, and whether or not the plea agreement in this particular case was knowing. And that was the issue raised by the government in their motion to dismiss, and I believe that in this particular case, both the appeal waiver and the plea agreement are ineperably tied, and that you can't have one without the other. And I would argue, because of the facts of this case, and there are sets of very unusual facts that occurred during the Rule 11 hearing, which I brought up during my briefing, that he was indicted, Mr. McCoy was indicted for conspiracy to traffic control substances. Well, speak to the issue of whether you properly objected to this issue, so as to preserve it for appellate review. Your Honor, I believe we did. We have been arguing, number one, about the plea itself having a sufficient factual basis, and in our argument, we did raise the issue about whether it was sufficiently voluntary, and he had sufficient knowledge, based upon the confusion in the plea process itself. And I believe, Your Honor, that based upon the arguments we made... What in particular do you think Mr. McCoy was confused about? Well, if you look at the plea agreement, there's actually three separate charges that are brought before Mr. McCoy during that hearing. There is a signed plea agreement that was signed on June 1, 2016, where the government made pen and ink changes then. That original agreement that was signed, the only one that was signed by my client, had 840 to 2,800 grams of cocaine, not cocaine-based, but powdered cocaine. But that was, wasn't that confronted and addressed in open court? It was confronted and addressed. However, my client did not sign or initial those changes. So what? His lawyer did? His lawyer did, but the question is not what his lawyer knew, Your Honor, I would submit, but the question is what he knew. Was it voluntary and understood by him what the particular charges in this case were? He was there. He was there. There's a second error, I think, that I want to make clear that is in the record as well, that when it was announced in open court, what my client heard was then 240 grams of cocaine-based instead of 840 grams of cocaine-based. So you basically have three separate possibilities. What did he say in his plea agreement, factual statement? In the factual statement, again, that was signed by the lawyer but not by the defendant, it said 840 grams of cocaine-based. But we would argue that there's enough confusion within this. When did he adopt his factual statement? Wasn't it read to him and asked him if that was a fair statement or an accurate statement of the facts? The entire statement was not read to him, highlights were read, end of the record. But if you look at... But didn't he go over it too? I mean, he's not disowning the factual statement, is he? He is not disowning the entire factual statement. The factual statement talks only exclusively about cocaine-based. It does, in fact, Your Honor, but I believe that based upon the fact, if you look at this particular defendant, what he's hearing during that Rule 11 hearing is at the least confusing and I would argue is contradictory. And then he's asked by the court at that point, do you agree with these facts? And he's heard one set of facts orally, he's read one set of facts that he signed, his lawyer signed another set of facts. I believe that this is that unusual factual situation of a case where without my client... Are you just creating the confusion or does the record show it? I thought that when they were in the plea agreement, the plea agreement used just cocaine, forgot to put in base, and they corrected that in open court in his presence. Now, that's totally consistent with what he included in his factual statement. It was all cocaine-based. Now, he didn't evidence any confusion then, did he? Did anybody? Well, I didn't even see somebody say, oh, yeah, that's a terrible mistake even. Everybody said, that's fine. That was a typo. Your Honor, there was actually confusion, again, called by the prosecutor who announced a different drug amount of cocaine base when he was reading the statement. There are three separate possibilities that my client could have believed. There was confusion there. I mean, he was just talking about, he was talking to the court about, he picked out a number. I don't know where he got that number. It's clearly not even relevant. But I thought the issue of the amount of the cocaine base had all been resolved in open court and was clearly consistent with the factual statement. And the factual statement seems to be the most important thing because that was the basis for why the defendant pled guilty. I mean, you have to... If the factual basis talked about cocaine and not cocaine base, I think you might have something to talk about. But it's hard to see that he's admitting a whole stream of conduct over quite a few words, a fairly detailed description, and entirely talks about his dealing in cocaine base. And he agrees that's what I was doing. Well, I would bring two points to your Honor. The first and foremost is if you look at the factual basis, as you go through the factual basis and you calculate the totals of the drug transactions that are included in the factual basis at that point, you only come to about 176 grams. So at that point, you are not in a position to get the... I thought we were talking about whether it's cocaine or cocaine base. Okay. So the second important issue is remember that the defendant is standing here as a layman in a formal proceeding. He has read an indictment and has a copy of an indictment which says both cocaine and cocaine base. This is not something that was just pulled out of the air. The indictment itself mentions both cocaine and cocaine base. So what I'm arguing is because there's three different versions that he did hear and could have heard or seen, and because you do not have his initials, you just have his attorneys, I would argue that it's unclear from that, your Honor, that what he was actually executing as part of his plea agreement. And as a result, if you look at the factual basis itself, you'll see that there's not enough drugs to add up to 840 grams. So if he were counting in the factual basis, it's easy to understand how a layman would be confused about this. This is an unusual set of facts. We don't often have a situation, your Honor, where these amounts show up multiple times in multiple ways and it has such a serious ramification for the client because in this particular case, I would argue that the result for the client is very different if it's cocaine versus cocaine base, if it's 840 versus 280, and because of Apprendi and because of promise that's come out of this court, those are essential factors that he must be pleading to. And without that factual basis to support it, as well as without being able to look back at the defendant and have that knowledge and voluntariness, at that point, we do not know for sure what he thought he was pleading to. How often have you seen a case like this reversed based upon a set of facts that you've given here, where the lawyer has signed these documents, PSR states the amount, and all these facts are set forth in the statement there? I've been looking for one with this number of mistakes. How many times have you found a case? I haven't found one, sir. I have not found one, nor have I found one with a set of facts that would support this level of confusion at the Rule 11 hearing. There are so many times this could have been saved. During his sentencing hearing, for example, he's asked, do you plead guilty to this conspiracy? But the judges at that point did not ask what conspiracy or what amount of conspiracy he was pleading to. So if you look through the record, it's replete with examples that his confusion is understandable under the record. And if you look at what we've provided in terms of his pro se letters, which are his only direct speaking to the court, you see over and over that he has a problem with the quantity of drugs. He is saying he's counting them up and saying to the judge, I don't think this is right. He's saying, I think I was pushed into this because of a plea. He's not at that point, Your Honor, looking at an understanding of what he actually pled to. And if you read through those four letters, and I think they're very telling. So does that make out the contours of an effective assistance of counsel claim? I think it may, Your Honor, but that would be another day to come back here to look at an effective assistance of counsel. I think in this particular case, you should look at it as, was the defendant, not the defendant's counsel, not the judge, not the government, but was the defendant knowingly waiving his right to an appeal and knowingly waiving his right to a trial and knowingly entering a guilty plea based upon the confusion within the record itself. Now, very rarely, and Judge Winn, the reason you don't see these cases, you very rarely have a record that's developed with three separate drug amounts, any of which would be supported by the indictment. So it's easy to understand how a layman in this particular set of circumstances could become confused about exactly what am I pleading to. And if he's confused, there is not an essential meeting of the minds at the plea agreement stage necessary to support and necessary to support either the appeal waiver or his ultimate plea agreement. And without his acquiescence, the factual basis itself, there's not enough facts in the case to support 840 grams. And you come back to the fact it's understandable why he might have pled to 240 but not 840, because 240 is pretty close to the amount of the buys that they actually caught him in. Judge Winn, it's a very unusual set of facts, I would argue. And I've been looking and I've looked hard, and I'm sure the government has too, and we're not seeing this kind of confusion that piles upon itself, nor are we seeing an example at the trial level where you can actually read in those letters, in the first, second, third, and fourth letters, the confusion from the mouth of the defendant. Because usually we only hear from his attorney, but this time we actually hear from him, in the record, saying this amount, this amount, this amount. You know, I did not enter this plea. This is not what I was getting into. This is not what I wanted to do. And if you look at the benefit of the bargain, there's no benefit to him from this plea. There was an 851 that went away, which would have been a 20-year minimum, but he was sentenced to 25. So based upon the enhancements he was facing, there would have been no effect of the 851. And in addition, the charges that were dismissed out of the indictment would have been subsumed into the original charge. So if you look at this from the defendant's standpoint, there's not a benefit of the bargain to him. Well, that's the way it turned out. But, I mean, you're talking with the benefit of hindsight. Unfortunately, we always talk with the benefit of hindsight up here. And, you know, I was asked during moot, is there something the judge could have said to fix it? And the truth is yes. I mean, there's a lot of questions, a single statement of the drug amount in the record in front of the client during the Rule 11 or during the sentencing, and perhaps it goes a different way. But instead, we have three different amounts presented to him during the Rule 11 hearing. You have the lack of his signature on the plea agreement change, which, as you know, under contract law, that's questionable. And then you add to the fact that under contract laws applied to plea agreements, there's actually a higher standard. And the failure of the attorney to act in a plea agreement is not treated the same way as the failure of an attorney to protect his client within a contract. So we would argue in this particular case, Your Honors, that there is a unique circumstance that would allow you to look at both the plea waiver and, more importantly, look at then both the plea agreement and the appellate waiver at the same time and see that it was not a willing waiver of his rights, that he did not know what the meeting of the minds was. He did not know the charge he was pleading to, which explains why he was so upset when he gets to the PSR and suddenly finds out that he's been determined to have pled guilty to something he didn't plead to. And so if you look at that particular circumstance, you know, after Apprendi, after Promise, these sorts of issues become issues that would normally be decided by the jury, the quantity of drugs indicating a higher mandatory minimum. And in this particular case, the only way it gets past the jury is if there's a valid plea agreement. So I would argue that under this unique set of facts, he is pleading to a higher charge or a lower charge, depending upon what you believe he understood when he was standing in front of those judges. And we cannot determine from the record because there are three separate things that he was told, all of which would be supported by the indictment. You cannot tell from that exactly what he pled to. And without that knowing plea, without that intelligent plea, and without a factual basis to support the volume of drugs involved, you simply can't have an appeal waiver, and you simply can't at that point have a knowing waiver of his rights. And I would argue at this point, we're out of time. Thank you. I'll reserve the remainder. You've reserved rebuttal time. Yes, sir. All right, Mr. Enright. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. This Court should dismiss Mr. McCoy's appeal because he knowingly and voluntarily waived his right to appeal as part of his plea agreement. McCoy's appellate waiver is enforceable along with the guilty plea because it was knowingly and voluntarily made. Yes, the parties jointly corrected a typo in the plea agreement in open court, and yes, the prosecutor orally misstated the drug quantity, but the totality of the circumstances is what you look at to determine whether a plea is knowingly Are you suggesting that we don't even get to the question of voluntariness because he waived his right to an appeal, or are you saying that we should address that on the merits, find that it was voluntary, and thereafter find a waiver? It's the latter point, Your Honor. The waiver is only applicable and enforceable if it's voluntary, and this Court's made clear that when the United States moves to dismiss, the Court first determines whether it's voluntary under the totality of the circumstances, and if it is, it will enforce the waiver. Well, that's going to require a factual basis to support it, so it looks like to me I don't know what the waiver is going to do. Well, a guilty plea does require a factual basis, but if the guilty plea was knowingly and voluntarily entered under the totality of the circumstances, then the factual basis requirement under Rule 11.3.B is waivable like any other issue, so long as the factual basis doesn't undermine the voluntariness or lack thereof doesn't undermine the voluntariness and intelligence of the plea. I do want to talk about the voluntariness and intelligence because the totality of the circumstances makes clear that it was. Even allowing the correction of the typo in the statement by the prosecutor, the factual basis document doesn't contain any typo. It specifically says crack cocaine, cocaine base, and 840 to 2800 grams, and McCoy affirmed under oath that he read the factual basis, understood it, and agreed with it, and then over the course of the next six months, he received his draft pre-sentence report, which summarized all those terms, including the 840 grams, including that it was cocaine base. He received a new attorney who actually requested time to advise him about whether to move to withdraw his plea. No effort to withdraw his plea. He filed no objection to the paragraphs of the pre-sentence report detailing the agreement and the stipulation, and then he told the district court explicitly that he received, read, and understood the pre-sentence report, that his attorney had answered all his questions, and that same day told the court, I would have answered my plea colloquy questions the same way if you had asked them again, and he specifically affirmed directly addressing the district court that he was guilty of a conspiracy involving cocaine base or crack cocaine. That record, the totality of the circumstances, just leaves no room for the possibility that there was confusion, and to Judge Wynn's point, the defendant didn't move to withdraw his plea, so the voluntariness, although he didn't waive the voluntariness issue, it would be reviewed for plain error if he's seeking to get out of his plea entirely, and he can't show plain error because he told the court several times, I've seen the proceedings, I know what's going on, and I still wish to plead guilty, so the result would have been the same and it didn't affect his substantial rights. If the error in the pre-trial agreement had not been corrected with respect to the nature of the drug involved, cocaine versus cocaine base, would this be a different case? It might be a different case, Your Honor. That particular typo was only in an agreement about what to recommend at sentencing, and the defendant then did not object to that recommendation when it appeared in that drug amount when it appeared at sentencing, so when it appeared in the pre-sentence report. The district court was allowed to rely on the undisputed portions of the pre-sentence report, so it probably could have reached the same, could have sentenced him in the same way based on that. If not, the court could have relied on reports that the United States filed, which also established at least as much. I mean, I think E.B. alone, he told police that between him and McCoy, they were selling more than four to eight ounces of crack cocaine every couple of days from the first of May until at least around the first of August. So the court could have relied on that, on the same drug quantity. So I don't think the, I think, I guess the answer to your question is I don't think it would be a different, I think there might be a different analysis, but I think the result would be the same. Well, in this case, your colleague says that, of course, the fact here is that the lawyer corrected the mistake and initialed it, but your colleague seems to suggest that that didn't go far enough. What's your response to that? Your Honor, I do think it's important that the defendant himself enter the plea knowingly and voluntarily, but I think the record makes clear that the defendant himself did, because the defendant himself said, directly addressing the district court, directly addressing the magistrate judge while under oath, I read the factual basis. I understood the factual basis, and I agree with it. And he also said, I've heard everything that went on in this Rule 11 proceeding, and I still wish to plead guilty. So I don't think the record leaves any question that the defendant himself was aware of what he had agreed to after the pen and ink change and wished to go forward with it, Your Honor. And what about the misstatement by the prosecutor in open court regarding the quantity of the cocaine base, which was not addressed? Similarly, Your Honor, the factual basis, the written document that he stipulated, or he told the court directly, I did read, sign, and agree with, says that he's responsible for 840 grams, or between 840 grams and 2,800 grams. He said he agreed with that, which confirms that he understood that he was agreeing to take responsibility for that quantity. He also took the additional step at sentencing of saying, I have read the pre-sentence report, which echoed that same quantity, and specifically said that he had agreed to stipulate that amount. He said he agreed with it, he read it, or he read it and he understood it, and he spoke with his attorney about it, and his attorney answered all his questions. And that same day, he said he wanted to go forward with his plea. So the fact that he didn't say, oh, Your Honor, I thought I was stipulating or agreeing to something completely different, and in fact said the opposite, I would have answered those plea colloquy questions exactly the same way today as I would have as I did six months ago. That confirms that he personally was aware that he had agreed to recommend a quantity of 840 grams, and that he was pleading guilty to a conspiracy involving crack cocaine. Is that it? Your Honor, I won't take up the Court's time unless it has further questions. I will note that our brief addressed the merits of the issues, and our brief addressed the scope and enforceability of the waiver, the scope of the waiver if it's unenforceable. All right. Thank you, Mr. Enright. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. I would point to a couple of important issues that we addressed earlier, but I want to address slightly with more thought. The totality of the circumstances is obviously what you are looking at here when you're considering whether the appeal waiver or the plea agreement are appropriate. And I would encourage you to look through the record. You'll find that there are four pro se letters written by the defendant to the court, which is something we don't usually get in a criminal case where we get to see what the actual defendant's thoughts are. In the first letter, he asked to see pro se letters from a criminal defendant in a criminal case. Very rarely do they matter as much, I would argue, Judge Diaz, as they do here, Your Honor. In the first letter, he was asked to withdraw his plea. In the second letter, he asked again to withdraw his plea. In the third letter, he lays out quantity of drugs and evidence and does not demonstrate knowledge that he pled to a particular amount as has been indicated by the government. And in the fourth letter, he complains of being forced into the plea and the weights involved. After those four letters, his original attorney was replaced and there was a second attorney appointed. But I want you to think about, I would argue, that all the essential parts of this process are handled by judges and attorneys, and that's the normal way, obviously, everything is done. But the question of whether a plea agreement is knowing, whether it's voluntary, asks what did the defendant know? Not what did his attorney know, but what did the defendant know? And I believe the facts of this case give you a unique opportunity to look at what the confusion in the defendant's mind is at the time of a Rule 11 hearing. Because he's read some documents that both a factual basis, which has about 176 grams laid out, but then has 840 grams of cocaine base written on it. What more do you contend the trial judge was required to do? I believe after Apprendi, Your Honor, you could find that a trial judge is required to ask if you plead guilty to the particular drug amount that's giving you a particular mandatory minimum sentence. I believe that's what Promise would stand for and Apprendi would stand for, that you can't enter a plea to a charge unless you actually enter a plea to that charge and that mandatory minimum that would have to be proven in front of a jury. Ultimately, Your Honor. Even though it's all written in front of him and he has these statements, apparently he's pretty literate, he's writing letters, and now the judge has to take him through every specific fact there. In the ordinary case. The possibility of saying he was confused and he's represented not by one lawyer, but he gets rid of, he's smart enough to get rid of one lawyer and then he gets another lawyer. It looks like to me he employs the very same strategy, but he doesn't object to that one. Well, Your Honor, I believe if you're asking what I think should happen, I think when there is confusion in the plea agreement, in the plea process, as there was here. I'm asking a more pointed question. That is, what is the trial judge to do? In circumstances like this, because this is not the only plea agreement case we get. Most of these cases are plea agreement from the criminal side and you say it's the level of confusion here that takes this out of the normal realm of cases, but what does the trial judge do here? I would argue in this particular case, because of the realm of confusion, he should be asking about the particular quantities and the particular kind of drugs specifically to that defendant. He should assure himself that the defendant is going by what is written on the revised plea agreement he did not initial, not what he originally signed or the plea agreement that was announced in open court. He needs to know that that particular defendant hears what the actual charge that he is pleading guilty to and the actual mandatory minimum level of drugs that he is pleading guilty to so that he can satisfy himself that at that point is voluntary. I would argue that this court's examination of this particular case goes to the Rule 11 hearing, and that's the key point at which this case went off the rails, that the plea agreement was not knowing involuntary, that it was not supported by a factual basis, that the information... How do we take, following up on Judge Wynn's question, how does the district judge take this exchange? They said in the plea agreement that actually was in a statement relating to the sentencing. It wasn't a factual basis, but they left out the word crack and cocaine, so they corrected that. And the attorney affirmatively says, yes, we agree, that's a typo. And then the court has the defendant stand and he says, are you aware that a factual basis has been filed as an attachment to your plea agreement? And the defendant says, yes, sir. And the court says, have you read this factual basis? Do you understand it and agree with it? And the defendant says, okay, yes, sir. Now, at that point, is the judge supposed to do anything else? It seems to me, in his presence, the one reference, which was relating to sentencing and not to the factual basis, left out the word crack. They corrected it in an open court in front of the defendant. And then the court asked the defendant, well, there's a factual basis. Let's go over that. And the defendant says, yes. Now, should the court do anything more? May I answer, Your Honor? Yes, yes, yes. It's really a follow-up to what Judge Wynn was saying. I would argue that because the factual basis contains a calculation, if you add up the grams available there, you get to about in the 170s, 180s. You don't get to 840. And because of that confusion, even though he agrees to the factual basis, we again can't know that is he agreeing to the fact that he did 176 grams or is he agreeing to the written statement at the end that says 840. And I believe this case has that unique level of confusion at the Rule 11 hearing. Are you saying that the factual basis itself was incomplete? I'm saying that the fact – and we argued that the factual basis itself does not contain 840 grams. I meant the stipulation, what he signed. It did not contain all of the elements of the offense to which he was agreeing to plead guilty. I would argue it simply contained a statement that it was 840 grams. It did not contain enough drugs to reach 840 grams within the statement itself. About the ongoing conspiracy, and it says the amount of cocaine base, crack cocaine, that was known to or reasonably foreseeable by the defendant was at least 840 grams, but less than 2,800 grams. That's what he agreed to, and he signed that. Told the judge that was accurate, and he had read it. I'm trying to figure out further. Let's say there is a possibility of confusion. The defendant didn't manifest it, and the court never knew about it. As a matter of fact, the court's inquiry suggested that he did understand it all and did read it, and there was no problem. Should the court have done something more? I believe, as I said earlier, that because there was that confusion in what was signed, what was initialed, what was stated in open court, that there is a higher standard at that point for the court to understand exactly what he's pleading to, and if you look at the factual basis, the calculation of the numbers involved are about 176, and there's a statement of 840. The statement talks generically about ongoing transactions, and it talks about numerous transactions, and it talks about an unspecified amount that was found in his apartment so you couldn't add anything from there. But then at the paragraph, then it says the total amount for everything was what we said. Well, I think we understand. Thank you, Your Honor. I appreciate it. We'll come down in Greek counsel. Mr. Kilborne, I understand you're court-appointed. Yes, sir. I'd like to recognize that important service to the court. You've done a fine job. We'll come down in Greek counsel. Thank you.
judges: Paul V. Niemeyer, James A Wynn Jr., Albert Diaz